IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation, | ) ) ) | CASE NO. _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DECLARATORY RELIEF** |
| GREATER OMAHA PACKING COMPANY, INC., a Nebraska corporation, | ) ) ) | |
| Defendant. | ) | |

**COMES NOW** Plaintiff, Continental Casualty Company ("Continental"), an Illinois corporation, by and through its attorneys of record, Engles, Ketcham, Olson & Keith, P.C., and for its Complaint for Declaratory Relief, states and alleges as follows:

### INTRODUCTION

1. Continental was the commercial umbrella insurer for Greater Omaha Packing Company, Inc. (hereinafter "GOPAC") for the 2009-2010 policy year.

2. After GOPAC was implicated in a New England *E. coli* outbreak in October 2009 (hereinafter the "Northeast Outbreak"), GOPAC was named in multiple tort lawsuits filed by persons alleging *E. coli*-related bodily injury.

3. Since October 2011, when Continental assumed GOPAC's defense from GOPAC's primary insurer, Continental has defended GOPAC in eight bodily injury lawsuits related to the Northeast Outbreak. Continental's defense of GOPAC has included two jury trials, multiple post-trial motions, and an appeal to the First Circuit. Continental has incurred almost $2.5 million in defense of GOPAC to date.

4. Continental has also paid about $3.5 million in defense fees, settlements, and pre-judgment interest for GOPAC's indemnitee, Fairbank Reconstruction Corporation d/b/a Fairbank Farms ("Fairbank"), after a federal jury sitting in Maine found that GOPAC delivered raw sirloin

trim contaminated with *E. coli* to Fairbank.

5. GOPAC's insurers, Sentry Insurance Company and Continental, have also indemnified it for settlements in four tort lawsuits, which together total $1.95 million.

6. After almost five years of litigation, at least one tort lawsuit is still ongoing against GOPAC, with substantial defense fees still being incurred and substantial indemnity obligations still likely to be incurred. Further appeals are also likely.

7. Continental does not seek reimbursement for the amounts it has paid or will pay in defending and indemnifying GOPAC against the Northeast Outbreak tort lawsuits.

8. Continental is seeking declaratory relief from defending and indemnifying GOPAC for a breach of sales contract lawsuit filed against GOPAC by Fairbank in Buffalo, New York (hereinafter the "Breach of Contract Lawsuit") filed on or about September 6, 2013 in the United States District Court for the Western District of New York, Case No. 1:13-cv-00907. A copy of Fairbank's Complaint is attached hereto as Exhibit "1."

9. Continental is currently defending GOPAC in the Breach of Contract Lawsuit under a full reservation of rights providing it the right to deny defense and indemnification subject to the terms, provisions, and conditions of the Policy and applicable law.

10. The Breach of Contract Lawsuit is funded by certain bankruptcy creditors of Fairbank and its affiliated companies. Any proceeds recovered from GOPAC will be paid to these creditors, as set forth in Fairbank's First Amended Joint Chapter 11 Plan of Liquidation approved by the United States Bankruptcy Court for the District of Delaware.

11. Continental retained bankruptcy counsel on behalf of GOPAC who represented GOPAC's interests in the bankruptcy proceeding.

12. Continental contends that the damages sought in the Breach of Contract Lawsuit are beyond the scope of coverage provided by commercial insurance, and that Continental should not be required to insure GOPAC's business dealings.

**PARTIES**

13. At all times material hereto, Continental was an Illinois corporation with its principal place of business in Chicago, Illinois.

14. At all times material hereto, GOPAC was a Nebraska corporation with its principal place of business in Omaha, Nebraska.

## JURISDICTION AND VENUE

15. Pursuant to 28 U.S.C. § 1332(a), the Court has jurisdiction over this action as the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

16. Pursuant to 28 U.S.C. § 1391(b), venue is proper as GOPAC resides in the District of Nebraska.

17. An actual controversy of a justiciable nature exists between Continental and GOPAC involving their rights and obligations under the policy of insurance described herein, which controversy may be determined by the judgment of this Court.

## THE BREACH OF CONTRACT ALLEGATIONS

18. Fairbank's Breach of Contract Lawsuit alleges that GOPAC, a supplier of raw beef, provided Fairbank, a processor and seller of ground beef, with a signed "Product Guarantee" whereby GOPAC guaranteed to:

> indemnify and hold harmless . . . [Fairbank] . . . from all claims, damages, causes of action, suits, proceedings, judgments, charges, losses, costs, liabilities, and expenses . . . arising from any products (raw materials) as delivered to buyer by [GOPAC], that do not comply with the provisions of the Buyer's Raw Material Specifications or that are caused by the negligence . . . of GOPAC . . ..

19. Fairbank's complaint alleges that Fairbank's Raw Material Specifications included provisions requiring that GOPAC implement controls to prevent *E. coli* O157:H7 contamination, and further alleged that the Product Guarantee required that GOPAC deliver only raw materials that were not "adulterated or misbranded" and which could be legally "introduced into interstate commerce."

20. Fairbank initiated the Breach of Contract Lawsuit seeking a declaration that: (1) GOPAC supplied Fairbank with adulterated beef trim containing *E. coli* O157:H7 in September of 2009; (2) Fairbank acted reasonably when it used GOPAC's contaminated trim to process the ground beef at issue; and (3) as a result of GOPAC's breach of the Product Guarantee, GOPAC is contractually liable for Fairbank's resulting damages, including Fairbank's recall costs, lost profits, lost enterprise value, and recall-related attorney's fees, costs, and expenses.

21. Fairbank's Initial Disclosures, pursuant to Fed. R. Civ. P. 26(a)(1), in the Breach of Contract Lawsuit provided preliminary calculations of damages in the following amounts:

a. Expenses not reimbursed by insurance: approximately $800,000.

b. Incremental insurance costs due to outbreak event: approximately $450,000.

c. Lost profits: not less than $6,000,000.

d. Loss of enterprise value due to outbreak: to be determined.

e. Statutory interest: to be determined.

## POLICY LANGUAGE

22. Continental issued commercial umbrella liability Policy No. L 2099938374 (hereinafter "the Continental Policy") to GOPAC, with effective dates of April 3, 2009 to April 3, 2010. A copy of the Continental Policy is attached hereto as Exhibit "2."

23. The Continental Policy attaches above a general liability policy issued by Sentry Insurance a Mutual Company (hereinafter "Sentry's Policy") to GOPAC, with effective dates of April 3, 2009 to April 3, 2010.

24. Under Commercial Umbrella Plus Coverage Part, the Policy provides in relevant part:

> **SECTION I – COVERAGES**
>
> **1. Insuring Agreement**
>
> We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.
>
> a. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "incident" anywhere in the world;
> (2) The "bodily injury" or "property damage" occurs during the policy period….

25. The Policy defines "Ultimate net loss" as follows:

> **SECTION V – DEFINITIONS**
>
> **18. "Ultimate net loss"**
>
> a. "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

    (1) Final adjudication on the merits; or
    (2) Through compromise settlement with our written consent or direction….

  Because of "incident(s)" covered by this policy….

26. The Policy defines "Bodily injury" as follows:

**SECTION V – DEFINITIONS**

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

27. The Policy defines "Property Damage" as follows:

**SECTION V – DEFINITIONS**

12. **"Property damage"** means:

 a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
 b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

28. The Policy defines "incident" as follows:

**SECTION V – DEFINITIONS**

9. **"Incident"**

 a. With respect to "bodily injury" and "property damage," "incident" means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
 b. With respect to "personal and advertising injury," "incident" means an offense arising out of your business.

29. Under Commercial Umbrella Plus Coverage Part, the Policy incorporates the following exclusion:

**SECTION I – COVERAGES**

2. **Exclusions**

   This Insurance does not apply to:

   b. **Contractual Liability**

   "Bodily injury," "property damage" or "personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "ultimate net loss:"

   (1) That the insured would have in the absence of the contract or agreement; or
   (2) Because of "bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

30. The Policy defines "Insured contract" as follows:

    **Section V – Definitions**

    6. **"Insured contract"** means:

       a. A lease of premises;
       b. A sidetrack agreement
       c. An easement of license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
       d. An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;
       e. An elevator maintenance agreement; or
       f. The part of other contracts or agreements pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contracts or agreements are made prior to the "bodily injury" or "property damage."

       Tort liability means liability that would be imposed by law in the absence of contracts or agreements….

31. Plaintiff reserves the right to allege additional Policy provisions not specifically alleged herein which may limit, modify, or exclude coverage.

## COUNT I – DECLARATORY RELIEF

32. Continental re-alleges and incorporates by reference the allegations contained within paragraphs 1-31 of this Complaint.

33. Continental seeks a declaration from this Court that Continental has no obligation under the Policy, or otherwise, to indemnify or defend GOPAC in connection with the claims alleged in the Breach of Contract Lawsuit.

**WHEREFORE** Plaintiff, Continental Casualty Company, an Illinois corporation, prays for judgment of this Court declaring the rights and obligations of the parties under the Policy and entering an Order declaring:

1. Continental has no duty to defend or indemnify GOPAC in connection with the Breach of Contract Lawsuit as the Policy does not provide coverage for the claims asserted against GOPAC therein;

2. In the alternative, a declaration of the respective rights and obligations of all parties, pursuant to the Policy, and a declaration of the limits and obligations Continental has, if any, for the defense and indemnity of claims asserted against GOPAC in the Breach of Contract Lawsuit; and

3. Any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, Continental Casualty Company, an Illinois corporation, pursuant to Fed. R. Civ. P. 38 demands a trial by jury on all issues so triable in the United States District Court for the District of Nebraska.

Dated this 1st day of July, 2014.

    CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Plaintiff,

    By: s/ Dan H. Ketcham
    ENGLES, KETCHAM, OLSON & KEITH, P.C.
    1350 Woodmen Tower
    Omaha, Nebraska 68102
    (402) 348-0900
    Dan H. Ketcham, #18930
    Dain J. Johnson, #25259