IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation, <br><br> Plaintiff, <br><br> vs. <br><br> GREATER OMAHA PACKING COMPANY, INC., a Nebraska corporation, <br><br> Defendant. | 8:14-CV-194 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the motion to dismiss (filing 16) filed by defendant Greater Omaha Packing Company ("GOPAC"). For the reasons discussed below, GOPAC's motion will be granted in part, and Continental will be ordered to show cause why the remainder of its complaint should not be dismissed for failure to state a claim and for lack of an issue ripe for judicial review.

I. BACKGROUND

At all times relevant to this lawsuit, GOPAC was a Nebraska corporation and supplier of raw beef based in Omaha, Nebraska, and Continental was an Illinois corporation based in Chicago. Filing 1 at ¶¶ 13–14, 18. In 2009, Continental was GOPAC's commercial umbrella insurer. Filing 1 at ¶ 1. Under its policy with GOPAC ("the Policy"), Continental agreed to defend and indemnify GOPAC against certain claims for "bodily injury" and "property damage." *See* filing 1 at ¶¶ 24–30; filing 1-2 at 8, 21–22.

In October 2009, GOPAC was implicated in an *E. coli* outbreak in New England, and GOPAC was named in multiple tort lawsuits. Filing 1 at ¶ 2. In October 2011, Continental assumed GOPAC's defense from GOPAC's primary insurer. Since then, Continental has defended GOPAC in several lawsuits related to the New England outbreak. To date, Continental spent significant sums defending GOPAC. Filing 1 at ¶ 3. Continental has also paid approximately $3.5 million in defense fees, settlements, and prejudgment interest for GOPAC's indemnitee, Fairbank Reconstruction Corporation d/b/a Fairbank Farms ("Fairbank"), a processor and seller of ground beef, after a federal jury sitting in Maine found that GOPAC delivered raw sirloin trim contaminated with *E. coli* to Fairbank. Filing 1 at ¶ 4. Continental (along

with another insurer of GOPAC) has also indemnified GOPAC for settlements in four tort lawsuits, which together total $1.95 million. Filing 1 at ¶ 5. Continental alleges that substantial defense fees are still being incurred in that case, and additional, substantial indemnity obligations are likely to be incurred going forward. Filing 1 at ¶ 6.

In this case, Continental seeks a declaration regarding its duty to defend and indemnify GOPAC in a lawsuit filed against GOPAC by Fairbank in the United States District Court for the Western District of New York (the "New York suit"). Filing 1-1; *see also Fairbank v. GOPAC*, case no. 1:13-CV-907, filing 1 (W.D.N.Y. 2013). In the New York suit, Fairbank alleges that by supplying *E. coli*-contaminated beef, GOPAC violated a "Product Guarantee" GOPAC provided to Fairbank. Filing 1 at ¶ 18; filing 1-1 at ¶¶ 14–18. Fairbank's complaint asserts multiple theories of recovery: breach of contract, breach of express warranty, and breach of the implied warranties of merchantability and fitness for a particular purpose. Filing 1-1 at 8–12. Fairbank seeks a declaration that GOPAC breached the Product Guarantee and is liable for Fairbank's resulting damages, including Fairbank's recall costs; lost profits; lost enterprise value; and recall-related attorney fees, costs, and expenses. Filing 1 at ¶ 20; filing 1-1 at 6–8. Continental is currently defending GOPAC in the New York suit under a full reservation of rights. Filing 1 at ¶ 9.

## II. STANDARD OF REVIEW
### A. Rule 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the nonmoving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party, *Gallagher v. City of Clayton,* 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Id.* at 679.

### B. Rule 12(b)(1)

A motion pursuant to Fed. R. Civ. P. 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v.*

*FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008).

### III. ANALYSIS

Continental contends that it should not be required to insure GOPAC's business dealings, and that the damages sought in the New York suit are beyond the scope of the Policy. Continental seeks a declaration that it has no obligation (under the Policy or otherwise) to indemnify or defend GOPAC in connection with the claims alleged in the New York suit. Filing 1 at 7. The Policy contains a "Contractual Liability" exclusion, which Continental has pleaded, apparently as the basis for its assertion of non-coverage. *See* filing 1 at ¶¶ 29–31.

In response, GOPAC filed the pending motion to dismiss. GOPAC's motion attacks Continental's complaint in two steps. GOPAC first asserts that the complaint, as well as certain materials which it contends are embraced by the pleadings under Fed. R. Civ. P. 12(d), demonstrate as a matter of law that Continental has a duty to defend GOPAC in the New York suit. According to GOPAC, Fairbank's claims are for property damage and are covered by the Policy, and do not fall within the Contractual Liability exclusion. Thus, GOPAC argues that Continental does have a duty to defend it in the New York suit and its request for a declaration to the contrary must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. GOPAC then contends that the remainder of Continental's complaint—a request for a declaration regarding its duty to indemnify—is not ripe for review. So, GOPAC argues, the remainder of Continental's complaint should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[1]

The Court finds that at least some portion of the New York suit presents a claim for property damage within the meaning of the Policy. The Court further finds that the Contractual Liability exclusion does not apply to at least some portions of the New York suit. Continental asserts that other exclusions may apply, but it has not identified them. Thus, the Court will dismiss Continental's request for a declaration that it owes no duty to defend,

---

[1] GOPAC has actually phrased its Rule 12(b)(1) argument more broadly, asserting that the complaint as a whole is not ripe. But Continental's claim regarding its duty to defend is ripe. GOPAC has been sued and Continental has been called upon to provide a defense, which it has done under a reservation of rights. *See, e.g.*, *Scottsdale Ins. Co. v. Universal Crop Prot. Alliance*, LLC, 620 F.3d 926, 933–34 (8th Cir. 2010); *Aetna Cas. and Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992). It remains to be seen whether Continental's duty-to-indemnify claim is ripe.

insofar as that request is based upon the Contractual Liability exclusion or the lack of a claim for property damage. And the Court will order Continental to show cause why its duty-do-defend claim should be not dismissed in its entirety.

At this time, Continental's duty-to-indemnify claim is similarly underdeveloped, and the Court is therefore unable to determine if the remainder of Continental's complaint states a claim for relief or is even ripe for review. Accordingly, the Court will order Continental to show cause why the remainder of its complaint should not be dismissed.

### A. The Damages Sought in the New York Suit

As noted above, the Policy covers claims against GOPAC for "property damage." GOPAC contends that, in the New York suit, Fairbank is asserting claims for property damage which are covered by the Policy. As proof, GOPAC has submitted two documents from the New York suit: Fairbank's Rule 26 Initial Disclosures and Fairbank's answers to certain interrogatories. Filings 18-1 and 18-2.

As a preliminary matter, the Court must determine whether it may consider these materials. When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

The pertinent contents of GOPAC's first submission—Fairbank's Rule 26 initial disclosures—are alleged in Continental's complaint and are necessarily embraced by the pleadings. Continental does not contend otherwise. Continental does object, however, to GOPAC's second submission—Fairbank's answers to certain interrogatories. *See* filing 23 at 7. These answers are neither embraced by the pleadings nor, when GOPAC first provided them, were they matters of public record. Although they had been produced in the New York suit, they had not been filed with that court. Since then, however, these answers have been filed in the New York suit. *Compare* filing 18-2 at 3 *with* case no. 1:13-cv-907, filing 79-46 at 11 (authenticated at filing 79-48 at ¶ 47). As public filings in an ongoing lawsuit, these are now

matters of public record, and properly considered without converting GOPAC's motion to one for summary judgment. *See Levy*, 477 F.3d at 991.

In its initial disclosures, Fairbank stated that it is seeking, among other damages, certain expenses not reimbursed by insurance. Filing 1 at ¶ 21. In its answers to GOPAC's interrogatories, Fairbank clarified that this includes, among other things, $349,620 in expenses for "[h]eld product or disposal." Filing 18-2 at 3. GOPAC contends that these expenses qualify as "property damage," which the Policy defines as including, among other things, "[p]hysical injury to tangible property, including all resulting loss of use of that property." Filing 1 at ¶ 27 (emphasis supplied).

The Court agrees that expenses incurred for holding and disposing of tainted beef qualify as expenses resulting from the "loss of use" of that beef. Continental does not argue otherwise, except to assert that "a more complete analysis of the policy language and the additional terms and exclusions that may apply" is needed. Filing 23 at 7. But Continental is presumably familiar with the terms of its own policies, and this is the time to raise additional terms and exclusions, which Continental has not done.

The New York suit includes a claim for "property damage" within the meaning of the Policy. And once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims may fall outside of the policy's coverage. *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 537 (8th Cir. 1970) (applying Nebraska law); *Fireman's Fund v. Structural Sys. Tech., Inc.*, 426 F. Supp. 2d 1009 (D. Neb. 2006).

### B. The Contractual Liability Exclusion

As noted above, the Policy contains an exclusion for "Contractual Liability." As the Court understands it, Continental's argument is that the Contractual Liability exclusion applies because the New York suit is based (in part) on GOPAC's Product Guarantee to Fairbank. GOPAC counters that, by its terms, this exclusion does not apply. Alternatively, GOPAC asserts that the claims asserted against it in the New York suit fall within several exceptions to the exclusion, and are thus brought back within the Policy's coverage.

The Court must first determine which state's law governs its interpretation of the Policy. The Policy itself contains no choice-of-law clause. *See* filing 1-2. Continental asserts that the Policy is governed by Nebraska law, *see* filing 23 at n.1, and GOPAC does not contend otherwise. And based on its own review, the Court agrees that Nebraska law controls.[2]

---

[2] A federal court sitting in diversity applies the forum state's choice of law principles. *American Guar. and Liability Ins. Co. v. U.S. Fidelity & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012). When deciding conflict of law issues, the Supreme Court of Nebraska seeks

An insurance policy is a contract, and the Court will construe it like any other contract, according to the meaning of the terms that the parties have used. *Am. Family Mut. Ins. Co. v. Wheeler*, 842 N.W.2d 100 (Neb. 2014). When an insurance policy's terms are clear, the Court will give them their plain and ordinary meaning as a reasonable person in the insured's position would understand them. *Id.* If a policy is ambiguous, it will be construed in favor of the insured. *Id.*

The Contractual Liability exclusion and its exceptions provide, in relevant part:

> This Insurance does not apply to:
>
> . . . .
>
> "Bodily injury," [or] "property damage" . . . for which [GOPAC] is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to [otherwise-covered] liability . . . .
>
> (1) That [GOPAC] would have in the absence of the contract or agreement; or
>
> (2) Because of "bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

Filing 1 at ¶ 29; filing 1-2 at 8–9.

An "insured contract" is defined as, among other things:

> The part of other contracts or agreements pertaining to [GOPAC's] business . . . under which [GOPAC] assume[s] the tort liability to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contracts or agreements are made prior to the "bodily injury" or "property damage."

---

guidance from the Restatement (Second) of Conflict of Laws (1971). *See Erickson v. U-Haul Int'l.*, 767 N.W.2d 765, 772 (Neb. 2009). Under the Restatement, contract issues are governed by the law of the state with the most significant relationship to the parties or transaction at issue. Restatement, *supra*, § 188(a). The Court has reviewed the factors set forth in § 188 and finds that Nebraska law controls.

> Tort liability means liability that would be imposed by law in the absence of contracts or agreements.

Filing 1 at ¶ 30; filing 1-2 at 18.

For the Contractual Liability exclusion to apply, GOPAC's potential liability to Fairbank must have arisen "by reason of the assumption of liability in a contract or agreement." Filing 1 at ¶ 29; filing 1-2 at 8–9. This language—and the Contractual Liability exclusion, exceptions and all—is standard language found in many commercial general liability (CGL) policies. *See Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 74, 79 (Wis. 2004).

"'The key to understanding this exclusion . . . is the concept of liability assumed.'" *Id.* at 80 (quoting 2 Rowland H. Long, *The Law of Liability Insurance* § 10.05[2], 10–56, 10–57 (2002)); *see also Fisher v. Am. Family Mut. Ins. Co.*, 579 N.W.2d 599, 603 (N.D. 1998).

> "Although, arguably, a person or entity assumes liability (that is, a duty of performance, the breach of which will give rise to liability) whenever one enters into a binding contract, in the CGL policy and other liability policies an 'assumed' liability is generally understood and interpreted by the courts to mean the liability of a third party, which liability one 'assumes' in the sense that one agrees to indemnify or hold the other person harmless."

*Am. Girl*, 673 N.W.2d at 80 (quoting 21 Eric Mills Holmes, *Holmes' Appelman on Insurance* § 132.3, 36-37 (2d ed. 2000)).

The term "assumption" must be interpreted to add something to the phrase "assumption of liability in a contract or agreement." If the phrase is read to apply to all liabilities sounding in contract, the term "assumption" is rendered superfluous. *Id.* at 80–81. Thus, the majority of courts have concluded that this exclusion applies only where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement. *See, e.g.*, *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 795 (8th Cir. 2005) (applying Wisconsin law and following *Am. Girl*); *Owners Ins. Co. v. Ala. Powersport Auction, LLC*, No. 5:14-cv-147, 2015 WL 3439126, at *10–13 (N.D. Ala. May 28, 2015); *Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, No. 02-1218, 2004 WL 2501196, at *4–5 (D. Minn. Nov. 4, 2004); *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 236 P.3d 421, 431–32 (Ariz. Ct. App. 2010); *Broadmoor Anderson v. Nat'l Union Fire Ins. Co. of La.*, 912 So. 2d 400, 407 (La. Ct. App. 2005); *Travelers Prop. Cas. Co. of America v. Peaker Servs., Inc.*, 855 N.W.2d 523, 528–34

(Mich. Ct. App. 2014); *Fischer,* 579 N.W.2d at 602–04; *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.,* 949 P.2d 337, 341–42 (Utah 1997); *see also, Olympic, Inc. v. Providence Wash. Ins. Co. of Alaska,* 648 P.2d 1008, 1010–11 (Alaska 1982); *USM Corp. v. First State Ins. Co.* 652 N.E.2d 613, 615–16 (Mass. 1995); *cf. Day v. Toman,* 266 F.3d 831, 835 (8th Cir. 2001); *but see Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 124–133 (Tex. 2010). Conversely, the exclusion does not operate to exclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally. *Am. Girl,* 673 N.W.2d at 81.

The majority interpretation is reasonable in light of the fact that all business transactions are entered into according to some sort of agreement or understanding. *Gibbs,* 949 P.2d at 342. If the exclusion were interpreted otherwise, so as to exclude all liability associated with a contract by the insured, then CGL policies would be severely limited in their coverage. *Id.* The majority interpretation also accords with the generally-recognized understanding of the term "assumption," which is defined as "[t]he act of taking (*esp. someone else's debt or other obligation*) for or on oneself." *Black's Law Dictionary* 143 (9th ed. 2009) (emphasis supplied).

In the Product Guarantee, GOPAC agreed to

> indemnify and hold harmless . . . [Fairbank] . . . from all claims, damages, causes of action, suits, proceedings, judgments, charges, losses, costs, liabilities, and expenses . . . arising from any products (raw materials) as delivered to [Fairbank] by [GOPAC], that do not comply with the provisions of [Fairbank's] Raw Material Specifications or that are caused by the negligence . . . of GOPAC . . . .

Filing 1 at ¶ 18; filing 1-1 at ¶ 14 & p. 16. At first glance, it would seem that Fairbank's claims arise out of an assumption of liability by GOPAC.

However, in the New York suit, Fairbank is not seeking indemnity from GOPAC for Fairbank's own conduct. In other words, Fairbank is not asking GOPAC to assume Fairbank's liability to third parties, such as the persons who were injured by consuming tainted beef and who have brought tort suits against Fairbank. *See* filing 1-1 at ¶¶ 1–4. Rather, Fairbank asserts that GOPAC is contractually liable under the Product Guarantee for the recall costs, lost profits, and recall-related attorney fees, costs, and expenses that Fairbank incurred as a result of the tainted beef. *See, e.g.*, filing 1-1 at ¶¶ 5, 37, 39, 46, 53. Thus, Fairbank's claims are for "damages . . . arising from" GOPAC's own alleged negligence or the alleged failure of GOPAC's products to comply with certain specifications. Fairbank seeks to hold

- 8 -

GOPAC liable for GOPAC's own conduct, and is not asking GOPAC to assume liability for Fairbank's conduct. Thus, the exclusion does not apply.

Alternatively, the Court finds that an exception to the exclusion applies to at least some of the claims asserted by Fairbank. The exclusion contains an exception for liability that GOPAC "would have in the absence of the contract or agreement." Filing 1 at ¶ 29; filing 1-2 at 8–9. Fairbank's complaint asserts multiple theories of recovery: not only claims for breach of contract and express warranty, but also for the breach of the implied warranties of merchantability and fitness for a particular purpose. Those implied warranties attached independent of the Product Guarantee, and thus would have arisen "in the absence of the contract." *See USM Corp.*, 652 N.E.2d at 616.

The Court does not read this exception as applying only to liability arising in the absence of *any* contract. From the use of the phrase "*the* contract" immediately following the exclusion, it is clear that the exception is referring to the contract in the exclusion, i.e., one in which the insured has assumed the liability of another. Compare this language to the definition of "tort liability" in the "insured contract" section—"liability that would be imposed by law in the absence of contracts or agreements." The latter provision demonstrates that the drafters of the Policy knew how refer to liability in the absence of any contracts.

In sum, the exclusion does not apply, and if it does, an exception to the exclusion does apply, to at least a portion of the claims asserted in the New York suit. And if one of the claims is covered, the duty to defend is triggered as to the whole suit.[3] *See*, *Babcock & Wilcox*, 430 F.2d at 537. Thus, to the extent that Continental seeks a declaration of non-coverage based on the Contractual Liability exclusion, that request fails to state a claim for relief. To be clear: the Court is not holding that Continental does have a duty to defend. GOPAC has moved to dismiss Continental's request for a declaration of non-coverage, and that is the scope of the Court's holding. If GOPAC desires an affirmative declaration of coverage, it will need to come forward with evidence that establishes such coverage.

### C. Ripeness of the Remainder of Continental's Complaint

GOPAC contends that Continental's request for a declaration regarding its duty to indemnify is not ripe for review. Until it becomes legally obligated to pay something in the New York suit, GOPAC argues, any duty to

---

[3] Continental asserts that its claim relating to its duty to defend should not be dismissed because GOPAC has attacked only the Contractual Liability exclusion, and other exclusions may apply. But Continental has not explained what those exclusions might be—it has only pleaded the Contractual Liability exclusion, and has not raised any others.

- 9 -

indemnify is contingent upon facts and circumstances which are uncertain and yet to be determined.

The ripeness doctrine flows both from Article III's "cases" and "controversies" limitation and also from prudential considerations. *Pub. Water Supply Dist. No. 10 of Cass Cnty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003). The ripeness inquiry requires examination of both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Id.* at 572–73. The ripeness doctrine prevents the Court, through avoidance of premature adjudication, from entangling itself in abstract disagreements. *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

Continental has not explained the basis for its claim that it lacks a duty to indemnify. Thus, the Court cannot determine if the claim is ripe or not.[4] If Continental's claim presents a question of law, based upon the language of the Policy, then it may be ripe for review. *See, e.g.*, *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992). In contrast, if Continental's claim requires consideration of unresolved factual disputes also at issue in the New York suit, it may not be ripe. *See, e.g.*, *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013). In that case, the Court might also be less inclined to exercise its discretion under the Declaratory Judgment Act. *See, e.g.*, *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010); *Aetna Cas. and Sur. Co. v. Jefferson Trust and Sav. Bank of Peoria*, 993 F.2d 1364, 1366 (8th Cir. 1993).

Therefore, the Court will order Continental to show cause why its duty-to-defend claim should not be dismissed in its entirety for failure to state a claim. And the Court will order Continental to show cause why the remainder of its complaint should not be dismissed for failure to state a claim and lack of ripeness. Accordingly,

IT IS ORDERED:

1. GOPAC's motion to dismiss (filing 16) is granted in part, as set forth above.

2. Continental is ordered to show cause, on or before July 7, 2015, why the Court should not dismiss its complaint, as set forth above. GOPAC may file a brief in opposition on or before July 21, 2015.

---

[4] Continental has also sought a declaration of the parties' rights and obligations under the Policy, including the limits of Continental's duty to defend and indemnify in the New York suit. This issue is likewise too undeveloped for the Court to evaluate its merits or ripeness.

- 10 -

Dated this 22nd day of June, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge