IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation, | ) ) ) | CASE NO. 8:14-cv-194-JMG-CRZ |
| Plaintiff, | ) ) | |
| v. | ) ) | **AMENDED COMPLAINT FOR DECLARATORY AND OTHER RELIEF** |
| GREATER OMAHA PACKING COMPANY, INC., a Nebraska corporation, | ) ) ) | |
| Defendant. | ) | |

Plaintiff, Continental Casualty Company ("Continental"), an Illinois corporation, for its Amended Complaint for Declaratory Relief, states and alleges as follows:

## INTRODUCTION

1. Continental was the commercial umbrella insurer for Greater Omaha Packing Company, Inc. (hereinafter "GOPAC") for the 2009-2010 policy year.

2. After GOPAC was implicated in a New England *E. coli* outbreak in October 2009 (hereinafter the "Northeast Outbreak"), GOPAC was named in multiple tort lawsuits filed by persons alleging *E. coli*-related bodily injury.

3. Since October 2011, when Continental assumed GOPAC's defense from GOPAC's primary insurer, Continental has defended GOPAC in eight bodily injury lawsuits related to the Northeast Outbreak. Continental's defense of GOPAC has included two federal jury trials, multiple post-trial motions and an appeal to the First Circuit. Continental has incurred almost $3.4 million in defense of GOPAC to date.

4. In each of the federal jury trials, which proceeded in Maine, Fairbank Reconstruction Corporation d/b/a Fairbank Farms ("Fairbank") was initially sued by the underlying plaintiffs as the party who sold the meat to the grocery stores where underlying plaintiffs purchased the meat.

5. Fairbank then brought GOPAC into each suit as a third-party defendant, settled with

the underlying plaintiffs, and proceeded to trial on Fairbank's contractual indemnity claims against GOPAC pursuant to the Product Raw Material Guarantee (hereinafter the "Fairbank Guarantee"). Fairbank sought reimbursement for the amount it paid to settle the claims, as well as the attorneys' fees, costs and expenses incurred to defend those claims.

6. At the first jury trial, *Long v. Fairbank Reconstruction Corp.,* United States District Court, District of Maine, Cause No. 1:09-cv-592, the jury found that GOPAC delivered raw sirloin trim contaminated with *E. coli* to Fairbank. Judgment was entered against GOPAC on Fairbank's contractual indemnity claim.

7. GOPAC also lost the second jury trial, *Jones v. Fairbank Reconstruction Corp.,* United States District Court, District of Maine, Cause No. 2:11-cv-437, and judgment was entered against GOPAC on Fairbank's contractual indemnity claim.

8. To date, Continental has paid just under $3.9 million on behalf of GOPAC for the portion of Fairbank's contractual indemnity claims pertaining to Fairbank's attorneys' fees, costs and expenses. These amounts erode GOPAC's indemnity limit.

9. Continental has also received a subrogation demand on behalf of GOPAC from Fairbank's insurer for contractual indemnity of about $525,000 pertaining to amounts it paid on behalf of Fairbank for Fairbank's attorney's fees, costs and expenses. If paid, this amount will erode GOPAC's indemnity limit.

10. GOPAC's insurers, Sentry Insurance Company and Continental, have also indemnified it, or Fairbank on behalf of GOPAC, for settlements in six tort lawsuits, which together total $2.55 million. Of this amount, $500,000 was paid as part of Fairbank's contractual indemnity claims.

11. After almost six years of litigation, at least one tort lawsuit is still ongoing against GOPAC, with substantial defense fees still being incurred. This lawsuit has an Offer of Compromise of $15 million. (A copy of said Offer of Compromise is attached hereto and incorporated herein as Exhibit 1.)

12. It is possible that GOPAC may also be held liable, in this remaining tort lawsuit, for contractual indemnity claims by Fairbank for Fairbank's attorneys' fees, costs and expenses.

13. Continental does not seek reimbursement for the amounts it has paid or will pay in defending and indemnifying GOPAC against the Northeast Outbreak lawsuits for tort liability.

14. Continental is seeking declaratory relief from defending and indemnifying GOPAC

for a breach of sales contract lawsuit filed against GOPAC by Fairbank in Buffalo, New York (hereinafter the "Breach of Contract Lawsuit") filed on or about September 6, 2013 in the United States District Court for the Western District of New York, Case No. 1:13-cv-00907. (A copy of Fairbank's Complaint is attached hereto and incorporated herein as Exhibit 2.)

15. Continental is currently defending GOPAC in the Breach of Contract Lawsuit under a full reservation of rights, reserving its right to deny defense and indemnification subject to the terms, provisions, and conditions of the Policy and applicable law. (A copy of Continental's reservation of rights letter is attached hereto and incorporated herein as Exhibit 3.)

16. The Breach of Contract Lawsuit is funded by certain bankruptcy creditors of Fairbank and its affiliated companies. Any proceeds recovered from GOPAC will be paid to these creditors, as set forth in Fairbank's First Amended Joint Chapter 11 Plan of Liquidation approved by the United States Bankruptcy Court for the District of Delaware.

17. Continental retained bankruptcy counsel on behalf of GOPAC who represented GOPAC's interests in the bankruptcy proceeding.

18. Continental contends that the damages sought in the Breach of Contract Lawsuit are beyond the scope of coverage provided by its umbrella policy, and that Continental should not be required to insure GOPAC's business risks.

19. Continental also contends that it is entitled to reimbursement for the amounts it already has paid on behalf of GOPAC for the contractual indemnity of Fairbank that is not assumed tort liability.

**PARTIES**

20. At all times material hereto, Continental was an Illinois corporation with its principal place of business in Chicago, Illinois.

21. At all times material hereto, GOPAC was a Nebraska corporation with its principal place of business in Omaha, Nebraska.

**JURISDICTION AND VENUE**

22. Pursuant to 28 U.S.C. § 1332(a), the Court has jurisdiction over this action as the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

23. Pursuant to 28 U.S.C. § 1391(b), venue is proper as GOPAC resides in the District of Nebraska.

3

24. An actual controversy of a justiciable nature exists between Continental and GOPAC involving their rights and obligations under the policy of insurance described herein, which controversy may be determined by the judgment of this Court.

## THE BREACH OF CONTRACT ALLEGATIONS

25. Fairbank's Breach of Contract Lawsuit alleges that GOPAC, a supplier of raw beef, provided Fairbank, a processor and seller of ground beef, with a signed "Product Guarantee" whereby GOPAC guaranteed to:

> indemnify and hold harmless . . . [Fairbank] . . . from all claims, damages, causes of action, suits, proceedings, judgments, charges, losses, costs, liabilities, and expenses . . . arising from any products (raw materials) as delivered to buyer by [GOPAC], that do not comply with the provisions of the Buyer's Raw Material Specifications or that are caused by the negligence . . . of GOPAC[.]

26. Fairbank's complaint alleges that Fairbank's Raw Material Specifications included provisions requiring GOPAC to implement controls to prevent *E. coli* O157:H7 contamination, and further alleged that the Product Guarantee required GOPAC to deliver only raw materials that were not "adulterated or misbranded" and which could be legally "introduced into interstate commerce."

27. Fairbank initiated the Breach of Contract Lawsuit seeking a declaration that: (1) GOPAC supplied Fairbank with adulterated beef trim containing *E. coli* O157:H7 in September of 2009; (2) Fairbank acted reasonably when it used GOPAC's contaminated trim to process the ground beef at issue; and (3) as a result of GOPAC's breach of the Product Guarantee, GOPAC is contractually liable for Fairbank's resulting damages, including Fairbank's recall costs, lost profits, lost enterprise value, and recall-related attorney's fees, costs, and expenses.

28. Fairbank's Initial Disclosures, pursuant to Fed. R. Civ. P. 26(a)(1), in the Breach of Contract Lawsuit provided preliminary calculations of damages in the following amounts:

  1. Expenses not reimbursed by insurance: approximately $800,000.
  2. Incremental insurance costs due to outbreak event: approximately $450,000.
  3. Lost profits: not less than $6,000,000.
  4. Loss of enterprise value due to outbreak: to be determined.
  5. Statutory interest: to be determined.

29. In answers to GOPAC's interrogatories, Fairbank clarified that its "expenses not reimbursed by insurance," as set forth in paragraph 26 above, included $349,620 in expenses for "[h]eld product or disposal."

## POLICY LANGUAGE

30. Continental issued commercial umbrella liability Policy No. L 2099938374 (the "Policy") to GOPAC, with effective dates of April 3, 2009 to April 3, 2010. (A copy of the Policy is attached hereto as Exhibit 4.)

31. The Policy attaches above a general liability policy issued by Sentry Insurance a Mutual Company ("Sentry's policy") to GOPAC, with effective dates of April 3, 2009 to April 3, 2010. The Sentry policy is exhausted.

32. Under Commercial Umbrella Plus Coverage Part, the Policy provides in relevant part:

> **SECTION I – COVERAGES**
>
> **1. Insuring Agreement**
>
> We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.
>
> **a.** This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "incident" anywhere in the world;
> (2) The "bodily injury" or "property damage" occurs during the policy period[.]

33. The Policy defines "Ultimate net loss" as follows:

> **SECTION V – DEFINITIONS**
>
> **18. "Ultimate net loss"**
>
> **a.** "Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

5

      (1)     Final adjudication on the merits; or

      (2)     Through compromise settlement with our written consent or direction….

Because of "incident(s)" covered by this policy….

34. The Policy defines "Bodily injury" as follows:

   **SECTION V – DEFINITIONS**

   3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

35. The Policy defines "Property Damage" as follows:

   **SECTION V – DEFINITIONS**

   12. **"Property damage"** means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

36. The Policy defines "incident" as follows:

   **SECTION V – DEFINITIONS**

   9. **"Incident"**

   a. With respect to "bodily injury" and "property damage," "incident" means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
   b. With respect to "personal and advertising injury," "incident" means an offense arising out of your business.

37. Under Commercial Umbrella Plus Coverage Part, the Policy incorporates the following exclusions:

**SECTION I – COVERAGES**

2. **Exclusions**

    This Insurance does not apply to:

    b. **Contractual Liability**

        "Bodily injury," "property damage" or "personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "ultimate net loss":

        (1)  That the insured would have in the absence of the contract or agreement; or
        (2)  Because of "bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

    \*\*\*\*

    k. **Damage to Your Product**

        "Property damage" to "your product" arising out of it or any part of it.

    \*\*\*\*

    m. **Damage to Impaired Property or Property Not Physically Injured**

        "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

        (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
        (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    n. **Recall of Products, Work or Impaired Property**

        Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

        (1) "Your product";

7

>    (2) "Your work"; or
>
>    (3) "Impaired property";
>
>    if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

38. The Policy includes the following other relevant definitions:

>    **Section V – Definitions**
>
>    **5. "Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
>    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>    b.  You have failed to fulfill the terms of a contract or agreement;
>    if such property can be restored to use by:
>    a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or
>    b.  Your fulfilling the terms of the contract or agreement.
>
>    **6. "Insured contract"** means:
>
>    a. A lease of premises;
>    b. A sidetrack agreement
>    c. An easement of license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
>    d. An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;
>    e. An elevator maintenance agreement; or
>    f. The part of other contracts or agreements pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contracts or agreements are made prior to the "bodily injury" or "property damage."
>
>    Tort liability means liability that would be imposed by law in the absence of contracts or agreements….

>    ****

8

11. a. **"Products-completed operations hazard"**
Includes "bodily injury" and "property damage" occurring away from premises an insured owns or rents and arising out of "your product" or "your work" except:

(1) Products in your physical possession; or
(2) Work not yet completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following:

(1) When all work called for in the "insured contract" has been completed;
(2) When all of the work to be done at the site has been completed if the "insured's contract" calls for work at more than one site; or
(3) When that part of the work done at a job site has been put to its intended use by a person or organization other than another contractor or subcontractor working on the same project. Work that may need:
(a) Service;
(b) Maintenance;
(c) Correction;
(d) Repair; or
(e) Replacement;

but which is otherwise complete, will be treated as completed.

\*\*\*\*

14. **"Your product"** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made with respect to the fitness, quality, durability, performance or use of "your product" and the providing of or failure to provide warnings or

9

instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others not sold.

**15. "Your work"** means:

a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made with respect to the fitness, quality, durability, performance or use of "your work" and the providing of or failure to provide warnings or instructions.

****

39. Plaintiff reserves the right to allege additional Policy provisions not specifically alleged herein which may limit, modify, or exclude coverage.

## COUNT I – DECLARATORY RELIEF

40. Continental re-alleges and incorporates by reference the allegations contained within paragraphs 1-39 of this Amended Complaint.

41. Continental seeks a judgment declaring the rights and duties of Continental and GOPAC relative to an actual controversy between Continental and GOPAC regarding the construction and application of the Policy with respect to the Breach of Contract Lawsuit.

42. Continental has no duty under the Policy to defend GOPAC or pay any sums that GOPAC may be legally obligated to pay to Fairbank in the Breach of Contract lawsuit because:

a. Coverage for the damages alleged in the Breach of Contract lawsuit is excluded by the "Recall of Products, Work or Impaired Property" exclusion;

b. Coverage for the damages alleged in the Breach of Contract lawsuit is excluded by the "Damage to Your Product" exclusion; and

c. Coverage for the damages alleged in the Breach of Contract lawsuit is excluded by the "Damage to Impaired Property or Property Not Physically Injured" exclusion.

43. Moreover, in addition to being excluded, certain damages alleged in the Breach of Contract lawsuit simply do not fall within the coverage provided by the Policy.

44. Specifically, the Policy does not cover alleged lost profits, lost enterprise value or

any other alleged consequential damages. Such damages are unavailable at tort and, if such damages are available, they are only available by virtue of a contract or agreement. Therefore, such damages fall outside the coverage the Policy provides.

**WHEREFORE,** Continental prays for judgment of this Court declaring that:

a. Continental has no duty to defend or indemnify GOPAC in connection with the Breach of Contract Lawsuit as the Policy does not provide coverage for the claims asserted therein against GOPAC;

b. In the alternative, a declaration of the respective rights and obligations of all parties, pursuant to the Policy, and a declaration of the limits and obligations Continental has, if any, for the defense and indemnity of claims asserted against GOPAC in the Breach of Contract Lawsuit; and

c. Any other relief this Court deems just and equitable.

## COUNT II – REIMBURSEMENT OF CERTAIN CONTRACTUAL INDEMNIFICATION PAYMENTS

45. Continental realleges and reiterates each and every allegation contained in the foregoing paragraphs as though set forth fully herein.

46. Continental has fully defended GOPAC in the underlying tort actions, subject to a reservation of rights. (Exhibit 3.)

47. During the first case, *Long v. Fairbank Reconstruction Corp.,* United States District Court, District of Maine, Cause No. 1:09-cv-592, the court found that Fairbank could recover on its indemnification claims against GOPAC if Fairbank could demonstrate at trial that it had acted reasonably pursuant to UCC § 2-715. (Exhibit 2 at page 5, para. 23.) The jury subsequently found that Fairbank had acted reasonably. (*Id.* at page 6, para. 24.)

48. Fairbank subsequently filed an application for its attorneys' fees and costs. In granting Fairbank's application, the federal district court in Maine awarded "only . . . those 'expenses, costs and attorney's fees' that a reasonable client in like circumstances would have expended absent an indemnification provision." (March 27, 2014 Order on Renewed Application for Attorneys' Fees & Costs, at page 6, attached hereto and incorporated herein as Exhibit 5.)

49. Likewise, in a subsequent trial, *Jones v. Fairbank Reconstruction Corp.*, United States District Court, District of Maine, Cause No. 2:11-cv-437, the jury found that the plaintiff's

11

illness was caused by GOPAC's adulterated raw beef trim in violation of the Fairbank Guarantee. (Special Verdict Form attached hereto and incorporated herein as Exhibit 6.)

50. Fairbank subsequently filed an application for its attorneys' fees and costs, which was granted by the court. (April 14, 2015 Order on Fairbank's Petition for Attorneys' Fees & Costs attached hereto as Exhibit 7.)

51. Continental does not dispute that a portion of the Fairbank Guarantee under which GOPAC assumed Fairbank's tort liability is an insured contract that falls within the scope of the exception to the contractual liability exclusion. Continental paid $500,000 in damages to Fairbank on behalf of GOPAC, because of bodily injury to Long and Smith.

52. However, Continental disputes the almost $3.9 million in damages that it paid to Fairbank on behalf of GOPAC for Fairbank's attorneys' fees and costs. GOPAC would not be liable for Fairbank's attorneys' fees and costs absent the indemnification provision in the Fairbank Guarantee. As such, that part of the Fairbank Guarantee is not an insured contract and, thus, Fairbank's attorneys' fees and costs fall outside the coverage provided by the Policy.

**WHEREFORE,** Continental prays for judgment of this Court ordering:

a. Reimbursement of the amounts that Continental has paid on behalf of GOPAC for Fairbank's attorneys' fees and costs;

b. Prejudgment interest; and

c. Any other relief that this Court deems just and equitable.

CONTINENTAL CASUALTY COMPANY, a Delaware corporation, Plaintiff,

By: s/ Dan H. Ketcham
ENGLES, KETCHAM, OLSON & KEITH, P.C.
1350 Woodmen Tower
Omaha, Nebraska 68102
(402) 348-0900
Dan H. Ketcham, #18930
Michael L. Moran, #24042

and

        Valerie L. Walker Rodriguez
Elenius, Frost & Walsh
333 S. Wabash Ave., 25th floor
Chicago, IL 60604
(312) 822-6279  Fax (312) 817-2486
Valerie.Rodriquez@CNA.com

## CERTIFICATE OF SERVICE

      I hereby certify that on January 25, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael F. Coyle, #18299
Patrick S. Cooper, #22399
Robert W. Futhey, #24620
Fraser Stryker, PC, LLO
409 S. 17 St., #500
Omaha, NE 68102-2663
(402) 341-6000
mcoyle@fraserstryker.com
pcooper@fraserstryker.com
rfuthey@fraserstryker.com

        s/ Dan H. Ketcham